UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARMANDO COLÓN,

              Plaintiff,

   -against-

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION; WLADYSLAW SIDOROWICZ,
Sullivan Correctional Facility Medical Director;
SULLIVAN CORRECTIONS OFFICERS "JOHN
and/or JANE DOES" 1, 2, 3, etc.; SULLIVAN
CORRECTIONAL FACILITY MEDICAL
OFFICIALS "JOHN and/or JANE DOES" 1, 2, 3,
etc.; ASHIT PATEL, M.D., all of whom are sued in
their individual capacities, and ALBANY MEDICAL
CENTER,

              Defendants.

No. 15 Civ. 7432 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

      Plaintiff Armando Colón brings this action pursuant to 42 U.S.C. § 1983, Title II of the

Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*., the Rehabilitation Act of

1973 ("RA"), 29 U.S.C. §§ 701 *et seq.*, and New York state tort law, against the New York State

Department of Corrections and Community Supervision ("DOCCS"), Sullivan Correctional

Facility ("Sullivan") Medical Director Wladyslaw Sidorowicz, unknown "John or Jane Doe"

Sullivan Correctional Officers ("Sullivan CO Does"), and unknown "John or Jane Doe" Sullivan

Medical Officials ("Sullivan Medical Does") (collectively, "State Defendants"); Albany Medical

Center ("AMC"), and Ashit Patel, M.D. (collectively, "Medical Defendants"). Specifically,



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9|15|2017

Plaintiff alleges (1) violations of his Eighth and Fourteenth Amendment Rights by Sidorowicz and the Sullivan Does; (2) violations of the ADA and the RA by DOCCS; (3) medical malpractice and (4) negligence by Sidorowicz, the Sullivan Medical Does, AMC, and Patel. Thus, Plaintiff's federal claims involve only the State Defendants, while his state law claims implicate both the State Defendants and the Medical Defendants.

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), all Defendants have moved to partially dismiss the Amended Complaint. For the following reasons, Defendants' motions to dismiss are GRANTED in part and DENIED in part.

## BACKGROUND

### I.     Factual Allegations[1]

Plaintiff, a 75 year-old visually-impaired incarcerated inmate at Sullivan Correctional Facility, claims that on September 22, 2013, he was assaulted by an unknown inmate as he was being escorted from his cell in the Sensorial Disabled Unit to the Sullivan infirmary. (Am. Compl. ("AC") ¶ 2.) At the time of the incident, Plaintiff, who is legally blind, was being escorted by Sullivan Corrections Officer Juan Martinez and an inmate at Sullivan, Martin Hodge, who "assisted visually impaired inmates through the facility." (*Id.*) As Plaintiff was being escorted to the infirmary, he was "approached, punched, and knocked unconscious by an unknown incarcerated person." (*Id.* ¶ 25.)

At the time of the incident, Plaintiff was in "keeplock status," which is designed to serve as a "form of punishment where incarcerated people are confined to their cells for approximately 23 hours a day and lose certain privileges." (*Id.* ¶ 22.) Plaintiff alleges that DOCCS has

---

[1] The following facts are taken from the operative complaint, (Am. Compl., ECF No. 41), and are accepted as true for the purposes of considering a motion to dismiss. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

implemented a policy of making inmates face the wall whenever an inmate assigned to other in-prison punishment programs, such as the Special Housing Unit ("SHU") or Correctional Alternatives Program ("CAR"), is being transported through the facility.  (*Id.* ¶¶ 19-20.)  But because Plaintiff was "keeplock status," rather than in the SHU or CAR, he was not afforded that same benefit while being transported.  (*Id.* ¶¶ 21-23.)  Thus, Plaintiff contends that "[b]ut for DOCCS failing to establish a policy assuring the safe transportation of visually impaired incarcerated people on keeplock status, Plaintiff would not have been assaulted by the unknown inmate," making "Defendants' failure to accommodate Plaintiff's disability [] the proximate cause of [Plaintiff's] injury."  (*Id.* ¶¶ 63-64.)

As a result of the attack, Plaintiff sustained a number of injuries, including multiple facial fractures, and was taken to Catskill General Hospital ("Catskill").  (*Id.* ¶¶ 26-28.)  After receiving a CT scan at Catskill, Plaintiff was subsequently transferred to Defendant Albany Medical Center.  (*Id.* ¶ 29.)  Doctors at AMC informed Plaintiff that his injuries would require surgery, but the surgery could not be performed until the swelling to his face was reduced.  (*Id.* ¶ 31.)  He was then transferred back to Sullivan.

Plaintiff returned to AMC on September 27, 2013, five days after the incident, so that Defendant Patel could perform facial reconstructive surgery.  (*Id.* ¶ 34.)  The reconstructive surgery included "implantation in Plaintiff's right eye-socket and right cheekbone."  (*Id.*)  The following day, Plaintiff was discharged from AMC and returned to the Sullivan infirmary, where he stayed for an extended period of time.  (*Id.* ¶ 35.)

Plaintiff alleges that he complained to Defendant Sidorowicz several weeks after the surgery about "excruciating pain on the right side of his face, swelling to the right side of his face, and difficulty chewing food on the right side of his mouth."  (*Id.* ¶ 37.)  Nevertheless, not

until two months after his surgery, in December 2013, was Plaintiff transferred to Coxsackie Correctional Facility's Regional Medical Unit to be examined by Dr. Richard Agag. (*Id.* ¶¶ 39-40.) During that examination, Dr. Agag discovered that the metallic hardware installed by Patel in Plaintiff's cheekbone "had ripped through the upper right side of Plaintiff's mouth." (*Id.* ¶ 41.) Dr. Agag then recommended an emergency surgery in order to remove the protruding hardware. (*Id.* ¶ 42.)

On January 29, 2014, Defendant Patel performed a second surgery to remove the hardware. (*Id.* ¶ 43.) After that surgery, Plaintiff contends that he continued to complain to Sullivan Corrections Officers and Medical Officers, including Defendant Sidorowicz, about "excruciating pain on the right side of his face, swelling to the right side of his face, and difficulty chewing food on the right side of his mouth." (*Id.* ¶ 45.) In April 2014, again months later, Plaintiff returned to AMC where he received a CT scan and, allegedly, was informed by Defendant Sidorowicz that a bone inside his mouth was "exposed and had become infected." (*Id.* ¶¶ 47-48.)

Thereafter, on May 10, 2014, a third surgery was performed by Defendant Patel where he covered the exposed bone inside Plaintiff's mouth with a skin graft. (*Id.* ¶ 50.) Several days later, Plaintiff was discharged and returned to Sullivan. (*Id.* ¶ 51.) After the May 2014 surgery, Plaintiff underwent two additional oral surgeries in order to remove excessive and overlapping tissue inside of his mouth. (*Id.* ¶ 52.)

Plaintiff alleges that to this day he continues to "experience extreme pain on the right side of his face and has difficulty chewing food on the right side of his mouth." (*Id.* ¶ 53.)

## II. Procedural History

Plaintiff commenced this lawsuit *in forma pauperis* and *pro se* on September 18, 2015. (*See* Compl., ECF No. 2.) Counsel appeared on his behalf on February 16, 2016. (ECF No. 34.) Plaintiff, assisted by counsel, amended his complaint on August 15, 2016. (*See* Am. Compl., ECF No. 41.) Each set of Defendants has moved to dismiss that complaint pursuant to Rules 12(b)(1) or 12(b)(6). (*See* ECF Nos. 58 (State Defendants), 68 (Medical Defendants).)[2]

## STANDARD ON A MOTION TO DISMISS

Under Rule 12(b)(6) or 12(c) motions to dismiss, the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (applying same standard to Rule 12(c) motions). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

---

[2] Briefing of the motions was complete as of January 17, 2017. (*See* State Defs. Mem. in Supp. Mot. ("State Mem."), ECF No. 59; Decl. Jeffery Hale in Supp. Mot. ("Hale Decl."), ECF No. 60; Pl. Mem. in Opp'n State Mot. ("Pl. Opp'n State"), ECF No. 62; State Mem. in Reply to Pl. Opp'n ("State Reply"), ECF No. 61; Medical Defs. Mem. in Supp. Mot. ("Med. Mem."), ECF Nos. 71-72; Aff. Adam T. Mandell, Esq. in Supp. Mot. ("Mandell Aff."), ECF No. 69; Aff. Vickey Masta in Supp. Mot. ("Masta Aff."), ECF No. 70; Pl. Mem. in Opp'n Med. Mot. ("Pl. Opp'n Med."), ECF No. 77; Med. Defs. Mem. in Reply to Pl. Opp'n ("Med. Reply"), ECF No. 75.)

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. It is important to note that "pleading is not an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges." *In re Merrill Lynch Ltd. P'ships Litig*, 7 F. Supp. 2d 256, 276 (S.D.N.Y. 1997). The court's "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. New York Medical College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and quotation marks omitted). A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

As to a motion brought under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*; *but see John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (where the 12(b)(1) motion is "facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it," and challenges the plaintiff's standing to bring suit, "at the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice,'" since "the plaintiff has no evidentiary burden" in that scenario) (citation omitted). Where a defendant comes forward with affidavits "reveal[ing] the existence of factual problems" in the assertion of jurisdiction, the plaintiff must "come forward with evidence of [his or her] own to controvert that presented by the

defendant[.]" *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (quoting *Exchange National Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

"In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "[T]he court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). Though a court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.*

## DISCUSSION

In sum, Plaintiff alleges he was not kept safe from harm at the prison and was discriminated against on the basis of his disability, which ultimately led to severe and painful injury, causing further suffering as a result of Defendants' negligence and medical malpractice. The Court will address the claims alleged against the various sets of Defendants starting with the federal causes of action. The Court notes that at this time the State Defendants do not seek to dismiss the Eighth Amendment claims brought against them relating to events occurring in or after May 2014. (*See* State Mem. at 1 n.1.) They do, however, seek to dismiss Plaintiff's ADA and RA claims, and all claims based on acts occurring prior to May 2014, on the basis of exhaustion. (*Id.* at 6-9.)

Therefore, no matter the resolution of Defendants' partial motions to dismiss, aspects of Plaintiff's Section 1983 claims will remain at this juncture. Given the apparent relationship

between those claims and Plaintiff's repeated transfer to AMC for medical treatment, if Plaintiff's negligence and medical malpractice claims are plausibly alleged, then the exercise of supplemental jurisdiction over Plaintiff's state law claims will be appropriate.[3]

## I.    Federal Claims

Plaintiff's federal claims under § 1983, the ADA, and the RA, must first be exhausted through the prison grievance process prior to bringing a suit in federal court. Additionally, the Court must consider the issue of sovereign immunity with regard to Plaintiff's claims against the State Defendants pursuant to the ADA.

### a.    Exhaustion

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (quoting *Porter v. Nussle*, 534 U.S. 516, 532, (2002)).

Exhausting all remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Washington v. Chaboty*, No. 09 Civ. 9199, 2015 WL 1439348, at *6 (S.D.N.Y. Mar. 30, 2015) (quoting *Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (internal quotation marks and citations omitted). "[B]ecause 'it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion[,] . . . [t]he exhaustion inquiry . . . requires that [the court] look at the state prison

---

[3] "The Court's supplemental jurisdiction, 28 U.S.C. § 1367(a), is available for [such related] common law claims." *Case v. Anderson*, No. 16 Civ. 983 (NSR), 2017 WL 3701863, at *7 n.7 (S.D.N.Y. Aug. 25, 2017).

procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures.'" *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)). A plaintiff must invoke all available administrative mechanisms, including appeals, "through the highest level for each claim." *Varela v. Demmon*, 491 F. Supp. 2d 442, 447 (S.D.N.Y. 2007).

It is the Defendants' burden to demonstrate that Plaintiff's claim is not exhausted. *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009). Where a prisoner has failed to exhaust some, but not all, of the claims included in the complaint, the PLRA does not require dismissal of the entire complaint. *Tafari v. Hues*, 539 F. Supp. 2d 694, 697 (S.D.N.Y. 2008) (citing *Jones*, 549 U.S. at 219-24); *see also Arnold v. Goetz*, 245 F. Supp. 2d 527, 531 (S.D.N.Y. 2003) ("the PLRA's exhaustion requirement is not jurisdictional in nature"); *accord Richardson v. Goord*, 347 F.3d 431, 434 (2d Cir. 2003). Instead, the court dismisses the unexhausted claims and proceeds to adjudicate the ones that are exhausted. *Jones*, 549 U.S. at 224. Nevertheless, a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust under the PLRA should be granted only "if it is clear on the face of the complaint that the plaintiff did not satisfy the [] exhaustion requirement." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016); *see also Sloane v. Mazzuca*, No. 04 Civ. 8266, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006) ("[B]y characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of motion to dismiss.") (internal quotation marks omitted).

A person detained or incarcerated at a DOCCS facility must exhaust all of the steps of the Inmate Grievance Resolution ("IGR") Program ("IGRP"). *See Robinson v. Henschel*, No. 10 Civ. 6212, 2014 WL 1257287, at *10 (S.D.N.Y. Mar. 26, 2014) ("the PLRA requires complete

exhaustion") (internal quotation marks and citations omitted).  The IGRP provides a three-tiered

process for adjudicating inmate complaints: (1) the prisoner files a grievance with the IGR

committee ("IGRC"), (2) the prisoner may appeal an adverse decision by the IGRC to the

superintendent of the facility, and (3) the prisoner then may appeal an adverse decision by the

superintendent to the Central Office Review Committee ("CORC").  *See Espinal*, 558 F.3d

at 125; *see also* 7 N.Y. Comp. Codes R. & Regs. § 701.5; *but see Williams*, 829 F.3d at 126 ("the

process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no

inmate could actually make use of it," making that portion of the process, "practically speaking,

incapable of use" pursuant to the Supreme Court's guidance in *Ross v. Blake*, 136 S. Ct. 1850,

1859 (2016)).

State Defendants argue that Plaintiff's ADA and Rehabilitation Act claims,[4] as well as

any claims relating to medical treatment occurring prior to May 2014, should be dismissed for

failure to exhaust.  In support of this argument, State Defendants provide a declaration from the

Assistant Director of the Inmate Grievance Program at DOCCS, Jeffery Hale, along with three

exhibits.  (*See* Hale Decl.)  While there are numerous instances in which courts take notice of

records outside of the pleadings to determine whether a plaintiff has exhausted his administrative

remedies, in those cases the complaint a) was the standard *pro se* form complaint that has a

check-box regarding exhaustion, b) contained allegations clearly stating that the inmate had

exhausted his administrative remedies, or c) clearly pointed to the fact that the inmate had, in

---

[4] Considering the plain language of the PLRA, district courts in this circuit have "concluded that '[t]he ADA falls within the rubric of any other federal law.'"  *Manon v. Albany Cty.*, No. 11 Civ. 1190, 2012 WL 6202987, at *3 (S.D.N.Y. Oct. 9, 2012) (quoting *Carrasquillo v. City of New York*, 324 F. Supp. 2d 428, 442 (S.D.N.Y. 2004)) (internal quotation marks omitted).  Therefore, "under the PLRA, ADA and Rehabilitation Act claims must be exhausted administratively prior to raising them in federal court."  *Carlson v. Parry*, No. 06 Civ. 6621, 2012 WL 1067866, at *12 (S.D.N.Y. Mar. 29, 2012).

fact, not exhausted.[5]  Here, in contrast, Plaintiff's operative complaint does not assert that he

exhausted his administrative remedies—it is silent on that front.  *See Jones*, 549 U.S. at 216

("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints.");

*Williams*, 829 F.3d at 122.

The Court, therefore, will not consider State Defendants' documentary evidence at this

juncture.  While it is imperative to resolve the issue of exhaustion as early as possible, if "it is

not clear from the face of the complaint whether the plaintiff exhausted, a Rule 12(b)(6) motion

is not the proper vehicle."  *McCoy v. Goord*, 255 F. Supp. 2d 233, 249 (S.D.N.Y. 2003).[6]

### b.  Sovereign Immunity

Under the Eleventh Amendment, suits in federal courts against state governments are

barred unless the State waives its immunity or Congress validly abrogates that immunity.  *Bd. of*

*Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).  Congress can abrogate a State's

sovereign immunity if it seeks to enforce the "substantive guarantees" of the Fourteenth

Amendment.  *Tennessee v. Lane*, 541 U.S. 509, 518 (2004).  With regard to the ADA, in *United*

*States v. Georgia*, the Supreme Court held that "insofar as Title II creates a private cause of

action for damages against the States for conduct that *actually* violates the Fourteenth

---

[5]  *See, e.g.*, *Robinson v. Clark*, No. 15 Civ. 8434, 2017 WL 775813, at *5 (S.D.N.Y. Feb. 27, 2017)
(acknowledging documents that point to the fact that defendant did not exhaust); *Artis v. Velardo*, No. 14 Civ. 833,
2016 WL 154122, at *3 n.1 (S.D.N.Y. Jan. 12, 2016) (taking judicial notice of the records submitted by defendants
to prove plaintiff had not exhausted); *Zappulla v. Fischer*, No. 11 Civ. 6733, 2013 WL 1387033, at *1 (S.D.N.Y.
Apr. 5, 2013) (taking judicial notice of documents that contradicted the plaintiff's assertion that he had exhausted).

[6]  The Court acknowledges that in Plaintiff's original, *pro se*, complaint, he stated that he had exhausted his
administrative remedies.  Nonetheless, once he obtained counsel he amended the complaint, which now does not
mention exhaustion.  *See Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 260 (2d Cir. 2002) ("an amended
complaint ordinarily renders the original complaint of no legal effect").  The Court assumes the amended complaint
falls within the guidelines of Rule 11, and therefore awaits resolution of this issue after discovery.

Defendants may request that discovery commence with issues such as the identity of the Doe Defendants
and exhaustion, and they may request to move for summary judgment on that discrete latter issue, should such a
motion be non-frivolous, once completing that portion of the discovery process.

Amendment, Title II [of the ADA] validly abrogates state sovereign immunity." 546 U.S. 151, 159 (2006) (emphasis in original).[7]  The *Georgia* decision essentially holds that Title II of the ADA abrogates a State's sovereign immunity *if* there was also a corresponding Fourteenth Amendment violation, but it "left open the question on whether Congress may validly abrogate sovereign immunity with respect to a particular class of misconduct that violates Title II but does not violate the Fourteenth Amendment."  *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Sci.*, 804 F.3d 178, 194 (2d Cir. 2015).

At this stage of litigation, the Court must take all of the facts in the Amended Complaint as true and, under the *Georgia* standard, it must determine "on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as much misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid."  *Georgia*, 546 U.S. at 159.  If Plaintiff's allegations satisfy the first two inquiries under *Georgia*, then the Eleventh Amendment does not bar a suit for monetary damages under the ADA against DOCCS.  *See Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 411 (S.D.N.Y. 2006).  If Plaintiff plausibly alleges violations of Title II (the first inquiry) that do not violate the Fourteenth Amendment (the second inquiry), then the Court must consider the third *Georgia* inquiry regarding abrogation of sovereign immunity.  But if Plaintiff fails to allege an actionable ADA violation at the outset, then questions of sovereign immunity are irrelevant.

---

[7]  The sovereign immunity analysis is different for claims brought under the Rehabilitation Act, which derives its power from the Spending Clause rather than the Fourteenth Amendment.  *See Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 113 (2d Cir. 2001).  Post-*Garrett*, "New York's continued acceptance of federal funds on behalf of [DOCCS] constitutes a waiver of sovereign immunity as to all . . . Rehabilitation Act claims."  *Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 414 (S.D.N.Y. 2006).

### i. Alleged Violations of Title II of the ADA[8]

Title II of the ADA mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a *prima facie* claim under the ADA, a plaintiff must allege that: "(1) that he is a 'qualified individual' with a disability; (2) that the defendants are subject to the ADA and/or Rehabilitation Act; and (3) that the plaintiff was 'denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, *by reason of [his] disabilit[y].*'" *Andino v. Fischer*, 698 F. Supp. 2d 362, 378 (S.D.N.Y. 2010) (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003); *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004)). *See also Disabled in Action v. Bd. of Elections in City of N.Y.*, 752 F.3d 189, 196-97 (2d Cir. 2014) (Section 504 of the RA and Title II of the ADA continue to have the same standards).

While a plaintiff must "prove a disability by offering evidence that the extent of the limitation in terms of their own experience, as in loss of depth perception and visual field, is substantial," *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999), here Plaintiff alleges he is legally blind and requires assistance traversing the prison. Thus, he has plausibly alleged that he is a qualified individual because his visual disability "substantially limits one or more of [his] major life activities," *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir. 1994): "seeing." 42 U.S.C. § 12102. Furthermore, the Supreme Court has explained that the statutory language of the ADA "unmistakably includes State Prisons and prisoners within its coverage," *Pennsylvania*

---

[8] Disability discrimination under the ADA and the RA are evaluated using the same standards. *See Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008).

*Department of Corrections v. Yeskey*, 524 U.S. 206, 209 (1998), subjecting DOCCS to the ADA's mandates.

But, in order to satisfy the last factor, a plaintiff must show that he was denied the opportunity to participate in or benefit from the State Defendants' services, programs, or activities, or was otherwise discriminated against by Defendants, as a result of his disability. *See* 42 U.S.C. § 12132. "A qualified individual can base a discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009). The complaint specifically mentions, and the alleged facts suggest, that Plaintiff's ADA claim is based on a failure to make a reasonable accommodation on the part of DOCCS.

Yet, Plaintiff does not allege that he requested the accommodation he now claims should have been provided, nor that he was denied the benefits extended to inmates in the SHU or CAR on the basis of his disability. Moreover, "[a]lthough a public entity must make 'reasonable accommodations,' it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice." *McElwee v. Cty. of Orange*, 700 F.3d 635, 641 (2d Cir. 2012). Plaintiff has ultimately failed to allege why the accommodation he seeks is more reasonable for blind prisoners—and legally required—when compared with the accommodations he already received, namely the guard and prisoner escorts. Though the Court sympathizes with the fact that he was attacked while travelling through the prison, it cannot infer any linkage between that attack and his disability or infer a relationship between DOCCS decision to implement certain safety prerogatives for inmates in SHU and CAR, but not keeplock prisoners, and Plaintiff's visual impairment.

Because the Court determines that Plaintiff has failed to allege a Title II violation, the *Georgia* inquiry is concluded, and the issue of sovereign immunity is inapplicable. Instead, Plaintiff's claims under the ADA and RA are dismissed for failing to state a claim.[9]

## II.    New York State Law Claims

Plaintiff's state law claims of negligence and medical malpractice must be analyzed with respect to each set of Defendants, because as explained below the defenses and procedures for suing state employees differs from those available to private medical professionals.

### a.   Claims Against DOCCS and Sidorowicz

State Defendants argue that Plaintiff's claims for negligence and medical malpractice, the third and fourth causes of action in the Amended Complaint, against Sidorowicz should be dismissed pursuant to New York Correction Law § 24(2). (State Mem. at 5.) Plaintiff opposes the application of § 24 by claiming that its application in this context would be an unconstitutional restriction on federal courts' exercise of their supplemental jurisdiction. The contested New York statute, as relevant to this case, provides that:

> 1. No civil action shall be brought in any court . . . against any officer or employee *of the department* . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.
>
> 2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department *shall be brought and maintained in the court of claims* as a claim against the state.

---

[9]   The Court notes that Plaintiff's attorney did not oppose the application of sovereign immunity to the ADA and RA claims. (*See generally* Pls. Opp'n State.)

N.Y. Corr. Law § 24(1) & (2) (emphasis added).  The Second Circuit has long-held that § 24 precludes a plaintiff from raising state law claims in federal court against state officers in their personal capacities for alleged actions arising within the scope of their employment.  *Baker v. Coughlin*, 77 F.3d 12, 16 (2d Cir. 1996) ("Appellants are entitled to invoke the benefits of § 24 irrespective of the forum in which [plaintiff] chooses to pursue her claims. Because a New York court would have dismissed [the] claims against [the defendants] pursuant to § 24, the district court should have done so.").  Even after the Supreme Court's decision in *Haywood v. Drown*— where the Court held that Correction Law § 24 "is not at liberty to shut the courthouse door to federal claims," like § 1983 claims, "that it considers at odds with its local policy," 556 U.S. 729, 740 (2009)—§ 24 continues to bar *state* law claims against DOCCS officers that are not brought to the Court of Claims unless the individuals acted outside their scope of employment.  *See, e.g.*, *Hassell v. Fischer*, 96 F. Supp. 3d 370, 385 (S.D.N.Y. 2015) ("Because such claims would be barred in New York state courts, this Court equally lacks jurisdiction over the claims.").

State Defendants admit that Sidorowicz was a DOCCS employee at the time of the alleged incident,[10] therefore the only question that remains is whether he acted within his scope of employment.  An employee's actions are deemed to fall within the scope of their employment if "the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions."  *Ierardi v. Sisco*, 119 F.3d 183, 187 (2d Cir. 1997) (internal citations and quotation marks omitted).  To determine whether an employee's actions fall within his scope of employment, courts in the Second Circuit have relied on:

> [T]he connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done

---

[10] Plaintiff asserted in his Amended Complaint that Sidorowicz was a DOCCS employee at that time, (AC ¶ 3), and State Defendants admit as much.  (State Mem. at 5.)

> by any employee; the extent of departure from normal methods of
> performance; and whether the specific act was one that the employer
> could reasonably have anticipated.

*Id.* (internal citations and quotation marks omitted). Upon careful review, there are no alleged facts in the Amended Complaint that suggest that Sidorowicz or any other DOCCS staff[11] acted outside of the scope of their traditional employment duties. Therefore, pursuant to Correction Law § 24, Plaintiff's state law claims for negligence and medical malpractice as alleged against Sidorowicz, the John and/or Jane Does, and DOCCS must be dismissed for lack of subject-matter jurisdiction.

**b. Claims Against AMC and Patel**

The Medical Defendants argue that they, too, fall under the protective umbrella of Correction Law § 24. (Med. Mem. at 4.) Neither the plain text of the statute, nor its legislative history, clearly indicate, however, that AMC and Patel would qualify "employees" of DOCCS. To come with the ambit of § 24, the Medical Defendants point to their contract with DOCCS.[12] Taking the contract under consideration, the Court first evaluates what it actually provides:

> Pursuant to Correction Law Section 24-a and Public Officers Law
> Section 17, the State shall *defend* and *indemnify* any person holding
> a license to practice a profession . . . who is rendering or has
> rendered professional services authorized under such license while
> acting at the request of DOCCS or a facility of DOCCS in providing
> health care and treatment or professional consultation to inmates of
> correctional facilities, without regard to whether such health care
> and treatment or professional consultation is provided within or
> without a correction facility. *The duty to defend and indemnify* is
> conditioned upon (1) delivery by the aforementioned licensed health
> care professional to the Attorney General at the appropriate regional
> office of the Department of Law of the original or a copy of any
> summons, complaint, process, notice, demand or pleading within

---

[11] This includes the Sullivan Medical Does and Sullivan CO Does.

[12] When considering a Rule 12(b)(1) motion, the Court may refer "evidence outside of the pleadings" in order to resolve the issue of subject-matter jurisdiction. *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017) (internal citation and quotation marks omitted).

> five days after being served with such document together with a
> written request that representation be provided; and (2) the full
> cooperation of the aforementioned licensed health care professional
> in the defense of such action or proceeding.

(Masta Aff., Ex. A at 8-9 (emphasis added).)  This provision provides AMC, along with its
health care providers, with indemnification by DOCCS.  *See, e.g.*, *Simpson v. Rodas*, No. 10 Civ.
6670, 2012 WL 4354832, at *1 (S.D.N.Y. Sept. 21, 2012) (noting that defendant, a private
physician, was entitled to representation under Correction Law § 24-a); *Wright v. Genovese*, 694
F. Supp. 2d 137, 152 n.10 (N.D.N.Y. 2010) ("[t]he indemnity provisions of the AMC contract
with [DOCCS] appear to extend, to medical professionals who provide medical services at AMC
to inmates at the request of [DOCCS], the protections afforded by N.Y. Correction Law § 24-a
and Public Officers Law § 17, which would indemnify the professionals as to any claims of
negligence by the inmate.").

   Thus, while there can be no debate that the Medical Defendants are indeed entitled to
indemnification by the State of New York, the novel proposition that the Medical Defendants
propose is that the entitlement to defense and indemnification, under Correction Law § 24-a,
extends to them the statutory protections of § 24.  They argue that the state legislature intended
to afford such individuals with the protections of both § 24-a and § 24—thus requiring Plaintiff
to bring his claims against them to the New York Court of Claims as discussed above.  As a
matter of statutory interpretation, the Medical Defendants contend that Correction Law § 24 and
§ 24-a, along with Public Officers Law § 17,[13] should be read together.

   But there is no indication, upon reviewing the 1978 Bill Jacket for the amendments to the
Correction Law that added § 24-a, that New York's legislature intended to silently combine the

---

[13]  This statute requires the State to indemnify its employees for judgments against them arising out of their
negligence while acting in the course of employment.  *See* N.Y. Pub. Off. Law § 17.

provisions. The clear intent of the amendment was "[t]o provide indemnification and defense of State officers in defending suits, claims and demands, and in satisfying judgments resulting from suits brought against them personally for negligent acts or omissions within the scope of their employment." July 7, 1978 Mem. in Governor's Bill Jacket to 1978 N.Y. Laws 466; s*ee* Office of the Attorney General of the State of New York, *Formal Opinion by Robert Abrams*, 1980 N.Y. Op. Atty. Gen. 40 (July 1, 1980) (discussing only indemnification, noting "th[e] bill extends the benefits of Public Officers Law § 17 to non-employee health professionals of both the Department of Correction and the Department of Mental Hygiene who render professional care at the request of those agencies").

Moreover, the Medical Defendants rely on several cases in which courts have extended Correction Law § 24 immunity to other *state* agents working on-behalf of DOCCS. *See, e.g.*, *Hall v. N.Y.S. DOCCS*, No. 12 Civ. 377, 2015 WL 901010, at *11 (N.D.N.Y. Mar. 3, 2015); *Brown v. N.Y.S. DOCCS*, No. 09 Civ. 949, 2011 WL 2182775, at *8 (W.D.N.Y. June 2, 2011). But unlike the case at hand, the defendants in these cases were employees within the Office of Mental Health ("OMH"), a New York State agency. Extending § 24 to other state agencies is quite different from extending it to private health providers. Instead, the legislature provided these private entities with indemnification to protect against liability.

Having considered the Medical Defendants' arguments and the legislative history of § 24-a, the Court concludes that § 24-a does not convey the same rights as § 24—and the fact that an entity falls within § 24-a does not similarly render § 24 applicable. Therefore, the Court may, and does, exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiff's state law claims against the Medical Defendants. The Court must now determine whether Plaintiff has plausibly alleged negligence independent of the allegations of medical

malpractice, and a plausible basis for seeking punitive damages, given that the Medical Defendants argue there is no basis for either of those claims.  In contrast, the Medical Defendants do not seek to dismiss the medical malpractice claims at this juncture.  (Med. Mem. at 2.)

### i. Negligence or Medical Malpractice

"It is settled that [in New York] a negligent act or omission 'that constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician constitutes malpractice.'"  *B.F. v. Reprod. Med. Assocs. of New York, LLP*, 136 A.D.3d 73, 80 (1st Dep't 2015); *Scott v. Uljanov*, 74 N.Y.2d 673, 674, 541 N.E.2d 398, 399 (1989) ("medical malpractice is simply a form of negligence, [and] no rigid analytical line separates the two").  The method for distinguishing between situations of "simple negligence" and "the more particularized medical malpractice standard" has been described as follows:

> negligence rules are applicable in those situations where the issue relating to the exercise of due care may be 'easily discernible by a jury on common knowledge'[;]  . . . [but] where the directions given or treatment received by a patient is in issue, this requires consideration of the professional skill and knowledge of the practitioner or the medical facility and the more specialized theory of medical malpractice applies.

*Coursen v. New York Hosp.-Cornell Med. Ctr.*, 114 A.D.2d 254, 256 (1st Dep't 1986) (citations omitted).  After reviewing Plaintiff's allegations against the Medical Defendants, the Court must agree with Defendants that there are no specific, non-conclusory allegations regarding failings by AMC or Patel that relate to hospital procedures or regulations as opposed to actual medical treatment.  (*See* Med. Reply at 8.)  Indeed, the portions of the complaint Plaintiff quotes in opposition to Defendant's motion, (*see* Pl. Opp'n Med. at 14), either concern the "medical attention" he was provided (AC ¶ 72(b)) or are simply conclusory statements suggesting the Medical Defendants acted unreasonably (AC ¶ 71; *see also id.* ¶¶ 72(c), 74 (relating to the injuries he sustained)).

Therefore, Plaintiff's negligence claims must be dismissed as duplicative of the medical malpractice claims.

### ii. Punitive Damages

Punitive damages in the medical malpractice context may be recoverable where the treating physician's actions "were so 'intentional, malicious, outrageous, or otherwise aggravated beyond mere negligence' as to support [such] an award." *Graham v. Columbia-Presbyterian Med. Ctr.*, 185 A.D.2d 753, 754 (1st Dep't 1992). However, "allegations of mere negligence" that "do not rise to [that] level of moral culpability" will not "support a claim for punitive damages." *Aronis v. TLC Vision Centers, Inc.*, 49 A.D.3d 576, 578 (2d Dep't 2008). In certain cases, allegations of egregious malpractice—the variety that could affect other patients in addition to the plaintiff—will suffice. *See, e.g.*, *B.F.*, 136 A.D.3d at 82 ("allegations that fragile X is a common cause of mental retardation for which donor candidates could easily have been tested, and given that defendants' failure to screen for fragile X potentially affected many patients other than plaintiffs," sufficient allegations were present to claim punitive damages).

At this stage, Plaintiff's allegations, which include malpractice that resulted in metal protruding into his mouth, infected bone, and repeated surgeries to correct the problems, show the potential for malpractice that is "aggravated beyond mere negligence." *Graham*, 185 A.D.2d at 754. But aside from Plaintiff's conclusory allegations that the Medical Defendants acted maliciously, recklessly, and intentionally, (*see, e.g.*, AC ¶¶ 72(c), 73), the complaint does not set forth a strong basis for finding "moral culpability." *Aronis*, 49 A.D.3d at 578. The claim for punitive damages is, thus, razor-thin. But, in the absence of a factual record regarding both the actual steps taken to treat Plaintiff, the degree to which that treatment deviated from standards of care, and the state of mind of the treating physicians, the Court cannot conclude that the injuries

Plaintiff allegedly suffered were the result of mere negligence. Therefore, drawing all reasonable inferences in favor of Plaintiff, an inference of gross negligence is plausible based on the facts alleged, and the Court will not dismiss the claim for punitive damages at this time.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED in part and DENIED in part. With regard to the claims alleged against the State Defendants, Plaintiff's federal claims brought pursuant to the ADA and RA are dismissed without prejudice for failure to state a claim, but the § 1983 claims remain in their entirety. Furthermore, Plaintiff's state law claims asserted against the State Defendants are dismissed without prejudice pursuant to New York Correction Law § 24 for lack of subject-matter jurisdiction. As for the claims alleged against the Medical Defendants, the claim for ordinary negligence is dismissed without prejudice as duplicative of the medical malpractice claim, but the medical malpractice claim and request for punitive damages remain at this time.

The Clerk of the Court is respectfully directed to terminate the motions at ECF No. 58 & No. 68. The State and Medical Defendants are directed to file their respective answers, if any, to the Amended Complaint on or before October 16, 2017. The parties are directed to appear for an initial conference on October 20, 2017 at 11:30 a.m. Furthermore, given Plaintiff's recent correspondence (ECF No. 78), Plaintiff's counsel is directed to respond to Plaintiff's inquiry in writing by October 2, 2017, answering whether they continue to represent him in this action and to provide a copy of such correspondence to the Court.

Dated:   September 15, 2017                      SO ORDERED:
         White Plains, New York

                                                 NELSON S. ROMÁN
                                                 United States District Judge

22