UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/17/2019

ARMANDO COLÓN,

                Plaintiff,

  -against-

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION; WLADYSLAW SIDOROWICZ,
Sullivan Correctional Facility Medical Director;
SULLIVAN CORRECTIONS OFFICERS "JOHN
and/or JANE DOES" 1, 2, 3, etc.; SULLIVAN
CORRECTIONAL FACILITY MEDICAL
OFFICIALS "JOHN and/or JANE DOES" 1, 2, 3,
etc.; ASHIT PATEL, M.D., all of whom are sued in
their individual capacities, and ALBANY MEDICAL
CENTER,

                Defendants.

No. 15 Civ. 7432 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

      Plaintiff Armando Colón brings this action pursuant to, *inter alia*, 42 U.S.C. § 1983

("Section 1983") and New York state tort law, against the New York State Department of

Corrections and Community Supervision ("DOCCS"),[1] Sullivan Correctional Facility

("Sullivan") Medical Director Wladyslaw Sidorowicz, unknown "John or Jane Doe" Sullivan

Correctional Officers ("Sullivan CO Does"), and unknown "John or Jane Doe" Sullivan Medical

Officials ("Sullivan Medical Does") (collectively, "State Defendants"); Albany Medical Center

("AMC"), and Ashit Patel, M.D. (collectively, "Medical Defendants"). Presently before the

Court are (1) Defendant Sidorowicz's motion for summary judgment pursuant to Fed. R. Civ. P.

56 dismissing Plaintiff's Section 1983 claims as against him, (ECF No. 123), (2) Medical

---

[1] Pursuant to the Court's Opinion and Order granting in part and denying in part Defendants' motions to
dismiss, dated September 13, 2019, no claims remain against DOCCS. (*See* ECF No. 79.)

Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 dismissing Plaintiff's medical malpractice claims against them, (ECF No. 137), and (3) Plaintiff's motion for leave to serve a late certificate of merit, (ECF No. 139). For the reasons that follow, Defendants' motions for summary judgment are GRANTED, and Plaintiff's motion for leave to serve a late certificate of merit is DENIED.

## BACKGROUND

### I. Factual Allegations

The following facts are taken from the parties' respective Rule 56.1 Statements, the pleadings, and a review of the record. The Court notes that a significant amount of discovery as to the factual allegations supporting Plaintiff's claims remains outstanding. (*See* Declaration of Adam T. Mandell, Esq. in Support of Medical Defendants' Summary Judgment Motion ("Mandell Decl.") (ECF No. 138) ¶ 10.)

#### a. Plaintiff's Assault and Surgeries

Plaintiff, who at all relevant times was an incarcerated inmate at Sullivan Correctional Facility, alleges that on September 22, 2013, he was assaulted by an unknown inmate as he was being escorted from his cell in the Sensorial Disabled Unit to the Sullivan infirmary. (Am. Compl. (ECF No. 41) ¶ 2.)[2] At the time of the incident, Plaintiff, who is legally blind, was being escorted by Sullivan Corrections Officer Juan Martinez and an inmate at Sullivan, Martin Hodge, who "assisted visually impaired inmates through the facility." (*Id.*) As Plaintiff was being

---

[2] The Court notes that Medical Defendants continue to dispute most of the factual recitation in the Amended Complaint. (Medical Defendants' Reply to Plaintiff's Counter-Statement Pursuant to Local Rule 5.1 (ECF No. 148).)

escorted to the infirmary, he was "approached, punched, and knocked unconscious by an unknown incarcerated person." (*Id.* ¶ 25.)

As a result of the attack, Plaintiff sustained a number of injuries, including multiple facial fractures, and was taken to Catskill General Hospital ("Catskill"). (*Id.* ¶¶ 26–28.) After receiving a CT scan at Catskill, Plaintiff was transferred to Defendant Albany Medical Center. (*Id.* ¶ 29.) Doctors at AMC informed Plaintiff that his injuries would require surgery, but the surgery could not be performed until the swelling to his face was reduced. (*Id.* ¶ 31.) Plaintiff was then transferred back to Sullivan.

Plaintiff returned to AMC on September 27, 2013, five days after the incident, so that Defendant Patel could perform facial reconstructive surgery. (*Id.* ¶ 34.) The reconstructive surgery included "implantation in Plaintiff's right eye-socket and right cheekbone." (*Id.*) The following day, Plaintiff was discharged from AMC and returned to the Sullivan infirmary, where he stayed for an extended period of time. (*Id.* ¶ 35.)

Plaintiff alleges that he complained to Defendant Sidorowicz several weeks after the surgery about "excruciating pain on the right side of his face, swelling to the right side of his face, and difficulty chewing food on the right side of his mouth." (*Id.* ¶ 37.) Two months after his surgery, in December 2013, Plaintiff was transferred to Coxsackie Correctional Facility's Regional Medical Unit to be examined by Dr. Richard Agag. (*Id.* ¶¶ 39–40.) During that examination, Dr. Agag discovered that the metallic hardware installed by Patel in Plaintiff's cheekbone "had ripped through the upper right side of Plaintiff's mouth." (*Id.* ¶ 41.) Dr. Agag then recommended an emergency surgery in order to remove the protruding hardware. (*Id.* ¶ 42.)

On January 29, 2014, Defendant Patel performed a second surgery to remove the hardware. (*Id.* ¶ 43.) After that surgery, Plaintiff contends that he continued to complain to

Sullivan Corrections Officers and Medical Officers, including Defendant Sidorowicz, about "excruciating pain on the right side of his face, swelling to the right side of his face, and difficulty chewing food on the right side of his mouth." (*Id.* ¶ 45.) In April 2014, Plaintiff returned to AMC where he received a CT scan and, allegedly, was informed by Defendant Sidorowicz that a bone inside his mouth was "exposed and had become infected." (*Id.* ¶¶ 47–48.)

Thereafter, on May 10, 2014, a third surgery was performed by Defendant Patel where he covered the exposed bone inside Plaintiff's mouth with a skin graft. (*Id.* ¶ 50.) Several days later, Plaintiff was discharged and returned to Sullivan. (*Id.* ¶ 51.) After the May 2014 surgery, Plaintiff underwent two additional oral surgeries in order to remove excessive and overlapping tissue inside of his mouth. (*Id.* ¶ 52.) Plaintiff alleges that to this day he continues to "experience extreme pain on the right side of his face and has difficulty chewing food on the right side of his mouth." (*Id.* ¶ 53.)

### b. Plaintiff's Inmate Grievance Filings

Sullivan is a correctional facility maintained by the New York State Department of Corrections and Community Supervision ("DOCCS"). (Defendant Sidorowicz's Rule 56.1 Statement ("State Defs. 56.1") (ECF No. 126) ¶ 2.) Pursuant to DOCCS Directive #4040, 7 N.Y. Comp. Codes R. & Regs. § 701, inmates in DOCCS facilities are permitted to file grievances with the facility's Inmate Grievance Resolution ("IGR") Committee ("IGRC"), appeal an IGRC decision to the Inmate Grievance Resolution Program ("IGRP" or "IGP") Superintendent of the facility (the "Superintendent"), and appeal the Superintendent's decision to the Central Office Review Committee ("CORC"). (Declaration of Shelley Mallozzi ("Mallozzi Decl.") (ECF No. 127) ¶ 2.) Plaintiff was aware of the foregoing procedures and, in fact, filed and appealed more

than 300 grievances to CORC over the course of his incarceration between February 1992 through December 2017.  (State Defs. 56.1 ¶¶ 5,7.)

### i.  Grievance 21235

On or about March 5, 2014, Plaintiff filed Grievance SUL 21235/14, dated February 27, 2014 ("Grievance 21235").  (State Defs. 56.1 ¶ 8; Declaration of Bruce J. Turkle in Support of Defendant Sidorowicz's Motion for Summary Judgment ("Turkle Decl.") (ECF No. 124) Ex. 3.) As relevant to this case, Plaintiff made allegations in Grievance 21235 concerning complications arising from his first two facial surgeries with Defendant Patel.  (Turkle Decl. Ex. 3 at Bates No. COLON 00908–09.)  Specifically, Plaintiff recounted his first facial reconstruction surgery, Dr. Agag's discovery that the hardware implanted in Plaintiff's palate had caused an opening in Plaintiff's mouth, and his second surgery.  (*Id.* at Bates No. COLON 00908.)  Plaintiff stated that the second surgery did not adequately address the opening in his mouth, and that he continued to experience drainage through his right nostril.  (*Id.*)  He further opined, "[T]his medical mishap has obviously caused me a great deal of mental anguish and anxiety attacks including headaches, nausea, dizzy spells and pain to the right side of my face which remains swollen for nearly half a year."  (*Id.* at Bates No. COLON 00909.)  In the section of Grievance 21235 entitled "Action Requested by Inmate," Plaintiff sought a referral from the dentist at Sullivan to an oral surgeon at Sing Sing Correctional Facility "as was previously attempted."  (*Id.*)  In the alternative, Plaintiff sought a referral from Dr. Patel to a more knowledgeable reconstructive surgeon in the New York City area for the purpose of closing the opening in his palate and "whatever the reconstructive surgeon deems appropriate with the approval of the facility health service director Dr. Wladyslaw Sidorowicz."  (*Id.*)

The IGRC responded to Grievance 21235, stating that Plaintiff's medical concerns could be addressed with a specialist "as he was provided for follow-up with reconstruction plastic surgeon." (*Id.* at Bates No. COLON 00905.) Plaintiff disagreed with the response and appealed to the Superintendent. (*Id.*) On March 18, 2014, the Superintendent accepted Grievance 21235 to the extent of stating, "Investigation reveals grievant is receiving proper medical care at this facility and is approved for outside specialist medical care. Grievant is advised to address his medical concerns with facility and/or outside specialist." (*Id.* at Bates No. COLON 00912.) Plaintiff timely appealed the Superintendent's disposition to CORC. (*Id.*) On August 6, 2014, CORC upheld the determination of the Superintendent. (*Id.* at Bates No. COLON 00913.) CORC explained, *inter alia*, that with respect to the appeal, Plaintiff had not presented "sufficient evidence to substantiate improper medical care or malfeasance by staff." (*Id.*) CORC advised Plaintiff to address concerns regarding outside medical care to that entity, mental health issues to the Office of Mental Health ("OMH"), and medical concerns via sick call. (*Id.*) CORC rejected Plaintiff's complaints regarding medical care prior to 2014 as untimely. (*Id.*)

### ii.  Grievance 21389

Following his third surgery, on or about August 7, 2014, Plaintiff filed Grievance SUL 21389/14, dated August 5, 2014 ("Grievance 21389"). (State Defs.' 56.1 ¶ 14; Turkle Decl. Ex. 5.) Grievance 21389 included, in relevant part, further allegations related to Plaintiff's assault and the surgeries performed by Defendant Patel. (Turkle Decl. Ex. 5 at Bates No. COLON 00944–45.) Plaintiff noted that in May of 2014, he underwent a third surgery "as a result of [Dr. Patel's] failure to notice and close the opening in Grievant's right-side palate area." (*Id.* at Bates No. COLON 00945.) Plaintiff asserted that such failure "fell far below professional medical standards" and "borders on medical negligence and malpractice." (*Id.*) He further complained

that Dr. Patel's actions resulted in a serious bone infection and continuous excruciating pain."
(*Id.*)  Plaintiff stated that the right side of his face continued to be "swollen, non-symmetrical and distorted, and causing Grievant bouts of depression and anxiety attacks making same known to Mental Health Services Personnel to no avail."  (*Id.*)  In the section entitled "Action Requested by Inmate," Plaintiff sought a fourth surgical procedure to correct his right-side facial features, which he said "remain[ed] non-symmetrical and distorted."  (*Id.*)  In the alternative, Plaintiff sought a recommendation from Dr. Patel and Dr. Sidorowicz that Plaintiff "be transported to a New York City area hospital that specializes in repairing and correcting facial features."  (*Id.*)

The IGRC responded to Grievance 21389, stating, *inter alia*, with respect to Plaintiff's face-related complaints that Plaintiff's medical concerns could be addressed with a specialist "as he was provided for follow-up with reconstruction plastic surgeon."  (*Id.* at Bates No. COLON 00947.)  The Grievance was forwarded to the Superintendent for action by the Grievance Clerk. (*Id.*)  On August 26, 2014, the Superintendent accepted Grievance 21389, again, to the extent of stating, "Investigation reveals grievant is receiving proper medical care at this facility.  Grievant is approved for surgery and will be evaluated for medical needs again after surgery is completed."  (*Id.* at Bates No. COLON 00946.)  Plaintiff timely appealed the Superintendent's disposition to CORC.  (*Id.*)  On January 21, 2015, CORC rejected Plaintiff's medical complaints through May 2014 as untimely, and otherwise upheld the determination of the Superintendent. (*Id.* at Bates No. COLON 00948.)  CORC again explained, *inter alia*, that with respect to the appeal, Plaintiff had not presented "sufficient evidence to substantiate improper medical care or malfeasance by staff," and advised Plaintiff to address concerns regarding outside medical care to that entity, mental health issues to OMH, and medical concerns via sick call.  (*Id.*)

### iii. Other Grievances

Other than Grievances 21235 and 21389, Plaintiff admits that he did not file any other inmate grievances relating to medical treatment for his face and jaw injuries sustained as a result of the September 22, 2013, assault prior to commencing this action. (State Defs. 56.1 ¶ 25; Plaintiff's Rule 56.1 Counter-Statement (ECF No. 130) ¶ 25.) Nonetheless, in his Memorandum of Law in Opposition to Defendant Sidorowicz's Motion for Summary Judgment, Plaintiff references a third grievance filed on April 27, 2015, "that further described his ongoing serious medical condition . . ., [wherein he alleged] that even after three reconstructive surgeries, the 'right side of his face continues [sic] swollen and sore causing grievant to experience periodic anxiety attacks and many sleepless nights.'" (Plaintiff's Memorandum in Opposition to Defendant Sidorowicz's Motion for Summary Judgment ("Pl. Mem. Opp. Sidorowicz Mot.") (ECF No. 129) 7 (quoting Turkle Decl. Ex. 10 at Bates No. COLON 01046).). Grievance SUL 21696/15 ("Grievance 21696") declared that Plaintiff's medical issues arising from his reconstructive surgeries "need to be addressed and resolved by reconstructive surgeons at AMC, or elsewhere." (Turkle Decl. Ex. 10 at Bates No. COLON 01046.) Plaintiff asked that Defendant Sidorowicz "seriously consider and request for approval and medical intervention from DOCCS Central Office Division of Health Services and evaluate grievant for possible corrective surgery." (*Id.* at Bates No. COLON 01047.)

Grievance 21696 was denied by the IGRC and the Superintendent, and Plaintiff appealed to CORC. (*Id.* at Bates No. COLON 01048–51.) On February 10, 2016, after the commencement of this action, CORC rejected as untimely Plaintiff's claims prior to 2015 and otherwise upheld the determination of the Superintendent. (*Id.* at Bates No. COLON 01045.)

## II.    Procedural History

Plaintiff commenced this lawsuit *in forma pauperis* and *pro se* on September 18, 2015. (*See* Compl., ECF No. 2.)  Counsel appeared on his behalf on February 16, 2016.  (ECF No. 34.) Plaintiff, assisted by counsel, amended his complaint on August 15, 2016.  (*See* Am. Compl., ECF No. 41.)  State Defendants and Medical Defendants subsequently moved to dismiss the Amended Complaint pursuant to Rules 12(b)(1) or 12(b)(6).  (*See* ECF Nos. 58 (State Defendants), 68 (Medical Defendants).)

By Opinion and Order dated September 15, 2017 ("9/15/17 Order"), the Court granted Defendants' motions to dismiss in part and denied them in part.  (ECF No. 79.)  The Court dismissed Plaintiff's federal claims brought against the State Defendants pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq*., and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, for failure to state a claim.  (9/15/17 Order 22.)  The Court also dismissed Plaintiff's state law claims as asserted against the State Defendants pursuant to New York Correction Law § 24 for lack of subject-matter jurisdiction.  (*Id.*)  However, Plaintiff's Section 1983 claims alleging violations of his Eighth and Fourteenth Amendment rights by Sidorowicz and the Sullivan Medical Does survived in their entirety.  (*Id.*)  As to the Medical Defendants, while the Court dismissed Plaintiff's claim against them for ordinary negligence as duplicative of Plaintiff's medical malpractice claim, the medical malpractice claim and Plaintiff's request for punitive damages survived.  (*Id.*)  The Court determined that it could, and did, exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiff's state law claims against Medical Defendants.  (*Id.* 19.)  After the 9/15/17 Order, the only remaining claims in this action are (1) Plaintiff's Section 1983 claim against Defendant Sidorowicz and the

Sullivan Medical Does, who have not been identified or served, and (2) Plaintiff's medical malpractice claim against the Medical Defendants.

In the 9/15/17 Order, the Court declined to consider documentary evidence submitted by the State Defendants on the issue of whether Plaintiff had exhausted his claims through the prison grievance process prior to bringing a suit in federal court, as required under the Prison Litigation Reform Act of 1995 ("PLRA"). (*Id.* 11.) The Court noted that Defendants would be permitted to request that discovery commence with issues such as exhaustion, and that they could seek leave to move for summary judgment on that discrete issue, should such a motion be non-frivolous, once that portion of the discovery process had been completed. (*Id.* 11 n.6.)

Accordingly, by letter dated May 2, 2018, State Defendants sought leave to move for summary judgment dismissing Plaintiff's Section 1983 claims against Defendant Sidorowcz on the grounds that Plaintiff failed to exhaust such claims. (ECF No. 111.) Briefing of the motion was completed on February 1, 2019. (ECF Nos. 123–132.) On March 5, 2019, Medical Defendants separately moved for summary judgment seeking dismissal of Plaintiff's medical malpractice claims against them on jurisdictional grounds, should the Court grant State Defendants' motion and dismiss the only federal cause of action remaining in this case. (ECF No. 137.) Also on March 5, 2019, Plaintiff moved to serve a late certificate of merit on Medical Defendants in connection with his state law medical malpractice claim. (ECF No. 139.)

## LEGAL STANDARDS

### I.    Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," *see* Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat' l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009). Courts must "draw all rational inferences in the non-movant' s favor," while reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Importantly, "the judge' s function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness' s credibility. *Id*. at 249. Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id*. at 250. Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party' s case." *Celotex*, 477 U.S. at 322.

Critically, in an opposition to a motion for summary judgment "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar*

*Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

## II.     The New York Certificate of Merit Requirement

Under New York law, "[i]n any action for medical . . . malpractice, the complaint shall be accompanied by a certificate, executed by the attorney for the plaintiff, declaring that: (1) the attorney has reviewed the facts of the case and has consulted with at least one physician . . . who is licensed to practice in this state or any other state and who the attorney reasonably believes is knowledgeable in the relevant issues involved in the particular action, and that the attorney has concluded on the basis of such review and consultation that there is a reasonable basis for the commencement of such action . . ." N.Y. C.P.L.R. § 3012-a(a)(1). This requirement is inapplicable to plaintiffs who are proceeding *pro se*. *Id.* § 3012-a(f).

The Second Circuit has not yet determined whether the requirement of a certificate of merit in a medical malpractice action is a substantive or procedural requirement. However, a number of district courts in this Circuit have held that "[a] state statute requiring a certificate of merit—such as N.Y. C.P.L.R. § 3012-a(a)—is substantive law that applies in a federal diversity action." *Crowhurst v. Szczucki*, 16-cv-00182(JGK), 2017 WL 519262, at *3 (S.D.N.Y. Feb. 8, 2017) (citing *Finnegan v. Univ. of Rochester Med. Ctr.*, 180 F.R.D. 247, 249 (W.D.N.Y. 1998)); *see E.L.A. v. Abbott House*, 16-cv-1688(RMB), 2018 WL 3104631, at *5 (S.D.N.Y. March 27, 2018); *Sanchez v. New York Correct Care Solutions Med. Servs., P.C.*, 16-cv-6826(CJS), 2018 WL 6510759, at *12 (W.D.N.Y. Dec. 11, 2018); *see also Frierson v. United States*, 5:17-cv-247,

2019 WL 2601692, at *2 (D. Vt. June 25, 2019) (holding that similar Vermont statute requiring filing of certificate of merit with complaint in medical malpractice actions created a substantive requirement equally applicable in the context of medical malpractice claims under the Federal Tort Claims Act).

## DISCUSSION

### I.     Defendant Sidorowicz's Motion

Plaintiff alleges that he made complaints to Defendant Sidorowicz and the Sullivan Medical Does following his facial surgeries, and that their "response to Plaintiff's complaints of serious medical needs were not reasonable to the pain and suffering he experienced." (Am. Compl. ¶¶ 37–38, 45–46.) Based on the foregoing, Plaintiff states that Defendant Sidorowicz and the Sullivan Medical Does were "deliberately indifferent to the physical and emotional pain and suffering Plaintiff experienced." (*Id.* ¶ 57.) These Defendants' alleged deliberate indifference forms the basis of Plaintiff's claim that he was deprived of his rights under the Eighth and Fourteenth Amendment, in violation of Section 1983. (*Id.* ¶¶ 58–59.) Defendant Sidorowicz seeks summary judgment dismissing Plaintiff's federal claims under Section 1983 against him on the ground that Plaintiff failed to exhaust his claims through the prison grievance process prior to bringing a suit in federal court. Plaintiff argues (1) that by filing and appealing Grievances 21235, 21389, and 21696, he exhausted his administrative remedies, and (2) that to the extent he did not exhaust, he must be excused because no grievance procedure was available to him. For the reasons that follow, the Court grants Defendant Sidorowicz's motion.

### a. Exhaustion within DOCCS' Inmate Grievance System

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).

Exhausting all remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Washington v. Chaboty*, No. 09 Civ. 9199, 2015 WL 1439348, at *6 (S.D.N.Y. Mar. 30, 2015) (quoting *Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (internal quotation marks and citations omitted). "[B]ecause 'it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion[,] . . . [t]he exhaustion inquiry . . . requires that [the court] look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures.'" *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)). Similarly, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim," because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. In order to properly exhaust his claims, a plaintiff must invoke all available administrative mechanisms, including appeals, "through the highest level for each claim." *Varela v. Demmon*, 491 F. Supp. 2d 442, 447 (S.D.N.Y. 2007). An inmate's filing of a

grievance rejected as untimely does not constitute proper exhaustion. *Woodford v. Ngo*, 548 U.S. 81, 83–84 (2006).

A court may not excuse a failure to exhaust, even to take "special circumstances" into account. *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). However, a prisoner cannot be required to exhaust administrative remedies that are not available to him. *Id.* at 1858. "[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). An administrative procedure is "unavailable" in this respect (1) when it operates as a simple dead end, with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) when it is so opaque that no ordinary prisoner can discern or navigate it; and (3) when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. *Ross*, 136 S. Ct. at 1859–60; *see also Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016) (opining that the foregoing circumstances "do not appear to be exhaustive," but declining to describe what other circumstances might render an otherwise available administrative remedy actually incapable of use).

It is the defendant's burden to demonstrate that a plaintiff's claim is not properly exhausted. *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009). Where a prisoner has failed to exhaust some, but not all, of the claims included in the complaint, the PLRA does not require dismissal of the entire complaint. *Tafari v. Hues*, 539 F. Supp. 2d 694, 697 (S.D.N.Y. 2008) (citing *Jones*, 549 U.S. at 219–24); *see also Arnold v. Goetz*, 245 F. Supp. 2d 527, 531 (S.D.N.Y. 2003) ("the PLRA's exhaustion requirement is not jurisdictional in nature"); *accord Richardson v. Goord*, 347 F.3d 431, 434 (2d Cir. 2003). Instead, the court dismisses the

unexhausted claims and proceeds to adjudicate the ones that are exhausted. *Jones*, 549 U.S. at 224.

For purposes of the PLRA, a person detained or incarcerated at a DOCCS facility must exhaust all of the steps of the IGRP. *See Robinson v. Henschel*, No. 10 Civ. 6212, 2014 WL 1257287, at *10 (S.D.N.Y. Mar. 26, 2014) ("the PLRA requires complete exhaustion") (internal quotation marks and citations omitted). As the Court has noted, the IGRP provides a three-tiered process for adjudicating inmate complaints: (1) the prisoner files a grievance with the IGRC, (2) the prisoner may appeal an adverse decision by the IGRC to the Superintendent of the facility, and (3) the prisoner may appeal an adverse decision by the Superintendent to CORC. *See Espinal*, 558 F.3d at 125; *see also* 7 N.Y. Comp. Codes R. & Regs. § 701.5; *but see Williams*, 829 F.3d at 126 ("the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it," making that portion of the process, "practically speaking, incapable of use" pursuant to the Supreme Court's guidance in *Ross*, 136 S. Ct. at 1859). Grievances must be filed within 21 days of the complained of conduct. N.Y. Comp. Codes R. & Regs., tit. 7, § 701.5(a)(1).

The IGP regulations provide that a grievance submitted by an inmate should "contain a concise, specific description of the problem and the action requested and indicate what actions grievant has taken to resolve the complaint." N.Y. Comp. Codes R. & Regs., tit. 7, § 701.5(a)(2). "The mere fact that plaintiff has filed *some* grievance, and fully appealed all decisions on that grievance, does not automatically mean that he can now sue anyone who was in any way connected with the events giving rise to that grievance." *Turner v. Goord*, 376 F. Supp. 2d 321, 324 (W.D.N.Y. 2005). However, "[b]ecause New York's IGP does not articulate an identification requirement, it is plain that a New York State prisoner is not required to name

responsible parties in a grievance in order to exhaust administrative remedies." *Espinal*, 558 F.3d at 126. Moreover, "a claim may be exhausted when it is closely related to, but not explicitly mentioned in an exhausted grievance." *Barnes v. Annucci*, No. 9:15-CV-0777 (GLS/DEP), 2019 WL 1387460, at *10 (N.D.N.Y. March 12, 2019) (quoting *Simmons v. Robinson*, No. 07-CV-7383, 2011 WL 31066, *4 (S.D.N.Y. Jan. 4, 2011)). Ultimately, in order to exhaust under the PLRA, a prisoner must allege facts sufficient to allow DOCCS to take appropriate responsive measures. *See Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004), *overruled on other grounds by Woodford*, 548 U.S. 81; *see also Espinal*, 558 F.3d at 126 ("The point is that prison officials ha[ve] the necessary information to investigate the complaints and the opportunity to learn which officers were involved in the alleged incident."); *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (noting that a grievance "may not be so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally").

### b. Availability of Administrative Remedies to Plaintiff

As a preliminary matter, the Court rejects Plaintiff's argument that he was excused from exhausting his administrative remedies because the DOCCS grievance process was not available to him. (*See* Pl. Mem. Opp. Sidorowicz Mot. 9–10.) There is no record evidence that the IGP is a "simple dead end" and "unable" to provide relief to Plaintiff, *Ross*, 136 S. Ct. at 1859, or that it is "so opaque that it" is "incapable of use" such that "no ordinary prisoner can discern or navigate it," *id.* Plaintiff presents no serious argument to the contrary. Rather, Plaintiff asserts (1) that he was physically unable to file grievances while he recovered from his first reconstructive surgery in the Sullivan infirmary, (Pl. Mem. Opp. Sidorowicz Mot. 10), and (2) that he was thwarted from taking advantage of the IGP by the machinations of Gary Terbush, Sullivan's IGRP coordinator, (*id.* 9–10).

As to Plaintiff's first assertion, Plaintiff, who is legally blind, testified that he relied on others to draft his grievances for him. (Declaration of Keith Szczepanski in Opposition to Defendant Sidorowicz's Motion for Summary Judgment ("Szczepanski Decl. Opp. Sidorowicz Mot.") Ex. 2 at 27, 55, 192.) Law clerks were purportedly unavailable to Plaintiff while he was in the Sullivan infirmary, and no other inmate was available to assist Plaintiff in drafting his grievances. (*Id.* at 27, 55.) Plaintiff does not explain why law clerks could not be made available in the infirmary or state that he ever requested one in order to file a grievance while confined to the infirmary. In any event, Plaintiff averred in his deposition that he was released from the infirmary in late October or early November of 2013, and that he could not file a grievance until after that. (*Id.* at 55–56.) However, the Court's review of administrative records submitted by Defendant Sidorowicz reveals that Plaintiff was able to, and did in fact, file a grievance as early as October 4, 2013, approximately one week after his surgery. (Mallozzi Decl. Ex. B at Bates No. COLON 00819.)[3] Moreover, even if Plaintiff's assertion that he could not file grievances from the infirmary were true, he provides no explanation as to why he waited until nearly five months after his release, after a second facial surgery had been performed, to formally complain about the medical treatment he received following his first facial surgery. (*See* Turkle Decl. Ex. 3.)

Plaintiff also states that he attempted to file "numerous" grievances regarding his medical complaints and Defendant Sidorowicz's alleged deliberate indifference to them, but was precluded from doing so by Gary Terbush, Sullivan's IGRP coordinator, who allegedly refused to accept Plaintiff's grievances and would regularly "trash" grievances made against medical or correctional staff. (Szczepanski Decl. Opp. Sidorowicz Mot. Ex. 2 at 27–28.) On February 12,

---

[3] The October 4, 2013, grievance is entitled "Not Provided with Mobility Guidance" in the IGP records. (Mallozzi Decl. Ex. B at Bates No. COLON 00819.)

2015, Plaintiff filed Grievance SUL 21579/15 ("Grievance 21579"), complaining that Terbush maintained an "unofficial custom, policy and practice of not allowing the inmate grievance clerk to process inmate grievance complaints that are not to his liking." (Szczepanski Decl. Opp. Sidorowicz Mot. Ex. 1 at 2.) Plaintiff did not elaborate on this assertion, but included a list of five other inmates that he alleged were "just a few of Mr. TerBush's many victims." (*Id.*) However, neither in Grievance 21579 nor at his deposition does Plaintiff identify a single specific grievance, on any subject, that was not processed by Terbush. (*See* Reply Declaration of Bruce J. Turkle in Further Support of Defendant Sidorowicz's Motion for Summary Judgment Ex. 1 78–80, 84, 159, 160, 162–63.)

Plaintiff's allegations are not rendered more convincing by the fact that Plaintiff properly adhered to the IGP's exhaustion requirements in some 320 other instances, (Mallozzi Decl. ¶ 8), both before and after the period at issue in this action, in which he filed and fully appealed grievances to CORC. *See King v. Puershner*, No. 17-CV-1373 (KMK), 2019 WL 4519692, at *9–*10 (S.D.N.Y. Sept. 19, 2019) (holding that there was no dispute of fact as to whether grievance process was "available" to plaintiff where he successfully filed and appealed to CORC 48 other grievances during his time in prison); *Davis v. Grant*, No. 15-CV-5359 (KMK), 2019 WL 498277, at *9–*10 (S.D.N.Y. Feb. 8, 2019) (holding that plaintiff's assertions that his grievances and appeals were somehow lost or destroyed were insufficient to establish a genuine issue of fact as to availability of IGP where plaintiff had successfully used IGP on 39 previous occasions); *Mckinney v. Prack*, 170 F. Supp. 3d 510, 517 (W.D.N.Y. 2016) (holding that plaintiff's allegation that IGP Deputy Superintendent refused to process his grievances did not create issue of fact as to availability of IGP where the record showed that he appealed and exhausted approximately 20 grievances during his 29 years of incarceration). From the date of

his assault, September 22, 2013, through the date when he commenced this action, September 18, 2015, alone, plaintiff filed and fully appealed 27 grievances to CORC. (Mallozzi Decl. ¶ 10.)

Plaintiff's self-serving and unsupported assertion that he filed additional grievances that Terbush refused to process is insufficient to establish a genuine issue of material fact as to the availability of the IGP to Plaintiff. *See Davis*, 2019 WL 498277, at *10 (plaintiff's statements that his grievance was lost or destroyed, which stood alone and unsupported, did not warrant exception to exhaustion requirement); *Engles v. Jones*, No. 13-CV-6461, 2018 WL 6832085, at *10 (W.D.N.Y. Dec. 28, 2018) (granting summary judgment to defendants for failure to exhaust where there was no record of plaintiff filing his grievance and plaintiff merely alleged without any documentary support that his grievance was lost or destroyed); *Scott v. Kastner-Smith*, 298 F. Supp. 3d 545, 555 (W.D.N.Y. 2018) ("[C]ourts have consistently held . . . that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement."). In addition, even assuming that Plaintiff filed other grievances that were not processed, he "could have re-filed any grievance or sought to appeal his grievance when he did not receive a favorable response" after filing his initial grievance. *Mckinney*, 170 F. Supp. 3d at 517; *see King*, 2019 WL 4519692, at *9; *Parker v. McIntyre*, No. 11-CV-865, 2014 WL 5432153, at *3 (W.D.N.Y. Oct. 27, 2014); *see also* N.Y. Comp. Codes R. & Regs., tit. 7, § 701.8(g) ("If the superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his/her grievance to CORC.").

Considering Plaintiff's unsupported allegations of interference by Superintendent Terbush, along with evidence that Plaintiff has successfully used the IGP to its fullest extent on 320 other occasions, and Plaintiff's failure to re-file or appeal the purportedly "trashed" grievances, the Court concludes that no exception to the exhaustion requirement applies.

### c. Exhaustion of Section 1983 Claims

The only question remaining is whether Plaintiff exhausted his claims against Defendant Sidorowicz by filing Grievances 21235, 21389, and 21696.

As to the first of these, Plaintiff contends that Grievance 21235, dated February 27, 2014, "documented the continued serious medical conditions ignored by Sullivan's medical staff, including Dr. Sidorowicz." (Pl. Mem. Opp. Sidorowicz Mot. 6.)  However, the issue before the Court is not whether Plaintiff merely documented his serious medical condition, but whether he alleged sufficient facts with respect to the alleged inadequate medical treatment provided by Sullivan medical staff to allow DOCCS to take appropriate responsive measures.  Grievance 21235 describes Plaintiff's assault, first surgery, and the subsequent discovery by Dr. Agag that the hardware Defendant Patel installed in Plaintiff's mouth had caused an opening, necessitating a second surgery.  (Turkle Decl. Ex. 3 at Bates No. COLON 00908–09.)  It also describes the serious medical complications Plaintiff continued to have following his surgeries, and Plaintiff's wish for further surgical intervention to resolve these complications.  (*Id.*)  It does not, however, describe any complaint against Sullivan medical staff relating to the treatment they provided him with following his surgeries.  Plaintiff's only reference to any Sullivan medical staff appears in the "Action Requested by Inmate" section, wherein Plaintiff seeks a referral from the dentist at Sullivan to an oral surgeon at Sing Sing Correctional Facility "as was previously attempted," and in the alternative, a referral from Dr. Patel to a more knowledgeable reconstructive surgeon for the purpose of closing the opening in his palate and "whatever the reconstructive surgeon deems appropriate with the approval of the facility health service director Dr. Wladyslaw Sidorowicz." (*Id.*)

Plaintiff is correct in asserting that he was not required to name Defendant Sidorowicz in his grievances in order to exhaust his administrative remedies. Nonetheless, Plaintiff was required to provide the information necessary for prison officials to investigate his complaints of deliberate indifference "and the opportunity to learn which officers were involved in the alleged incident[s]." *Espinal*, 558 F.3d at 126. Nothing in the relevant sections of Grievance 21235 suggests that Plaintiff ever complained of his injuries to Defendant Sidorowicz or any other Sullivan employee and was ignored or received an inadequate response. *See Turner*, 376 F. Supp. 2d at 325 (dismissing inmate's claims sounding in deliberate indifference against prison medical staff where "grievance alleged nothing more than one discrete instance of maltreatment" at the hands of a single nurse); *Sanchez v. Fischer*, 03-cv-4433(GBD), 2005 WL 1021178 (S.D.N.Y. May 2, 2005) (dismissing inmate's Eighth Amendment claim against doctor who erroneously prescribed AZT to inmate, who did not have HIV, after inmate ingested a used bandage where grievance did not allege that doctor failed to treat him properly); *Evan v. Manos*, 336 F. Supp. 2d 255, 259 (W.D.N.Y. 2004) (dismissing inmate's claims against dentist for failure to exhaust because "there [wa]s simply no suggestion anywhere in plaintiff's grievance that [the dentist] . . . had failed to provide him with adequate dental care"). This is consistent with Plaintiff's testimony that the allegations contained in Grievance 21235 did not concern the conduct of Defendant Sidorowicz that is the subject of the amended complaint. (Turkle Decl. Ex. 1 103–104.)

In contrast, numerous grievances submitted by Plaintiff on other occasions specifically reference medical decisions made by, and actions taken by, Defendant Sidorowicz. (*See* Turkle Decl. Ex. 4 at Bates No. COLON 00922–23 ("Dr. Sidorowicz [sic] decision to discontinue grievant [sic] pain management medication amounts to Cruel and Unusual Punishment . . ."); *Id.*

Ex. 5 at Bates No. COLON 00942–43 ("To this date, Dr. Wladyslaw Sidorowicz has done nothing to accommodate grievant's medical eyesight needs . . ."); *Id.* Ex. 6 at Bates No. COLON 01030 (requesting that "Dr. Sidorowicz reconsider his decision to deny grievant possession of his asthmatic inhalant," among other things).)  That Plaintiff was apparently well-versed in grieving inadequate medical care on the part of Defendant Sidorowicz suggests that he was aware that he could make such specific complaints but declined to do so in Grievance 21235.  In any event, contrary to Plaintiff's assertions, no straightforward reading of Grievance 21235 permits the conclusion that Plaintiff was "describing the deliberate indifference of Sullivan . . . medical officials, including [D]efendant Sidorowicz, to his serious medical condition."  (Pl. Mem. Opp. Sidorowicz Mot. 1.)  Nor is the Court persuaded that the content of Grievance 21235 would trigger any investigation into the deliberate indifference of Sullivan medical staff.  *See Robinson v. Knibbs*, No. 16-cv-03826 (NSR), 2019 WL 2578240, at *8 (S.D.N.Y. June 24, 2019) (plaintiff's grievances did not provide enough information for officials to investigate his claim that the defendant denied the Percocet prescribed by his orthopedist by threatening him with confinement in the Solitary Housing Unit where such forms complained only that prison health staff had not done anything to treat his pain and that certain medical personnel failed to properly administer sufficient medical attention).

Grievance 21389, filed on August 5, 2014, is similar in many respects to Grievance 21235.  It contains the same recitation of Plaintiff's assault and first surgery, his December 2013 examination by Dr. Agag, and his second surgery.  (Turkle Decl. Ex. 5 at Bates No. COLON 00944.)  Plaintiff then proceeds to describe the complications that remained after his second surgery, and his third surgery in May of 2014, which Plaintiff contends he had to undergo due to Defendant Patel's substandard medical care.  (*Id.* at Bates No. COLON 00944–45.)  For the

reasons discussed above, these allegations do not suffice to exhaust Plaintiff's deliberate indifference claim.

Grievance 21389 contains three additional allegations that distinguish it from Grievance 21235.  First, Plaintiff describes the pain he was in following his first surgery and states that such pain was "[a] fact made well known to the Sullivan Correctional Facility medical staff."  (*Id.* at Bates No. COLON 00944.)  Second, Plaintiff says that he was examined by Dr. Agag in December 2013 only "after months of complaining to medical staff" at Sullivan.  (*Id.*)  Finally, Plaintiff says that as a consequence of his facial injuries, he has suffered "bouts of depression and anxiety attacks making same known to Mental Health Services Personnel to no avail."  (*Id.* at Bates No. COLON 00945.)

In the Amended Complaint, Plaintiff alleges that Defendant Sidorowicz and the Sullivan Medical Does were deliberately indifferent to his medical needs following his first facial surgery on September 27, 2013, (Am. Compl. ¶¶ 37–38), and his second surgery on January 29, 2014, (Am. Compl. ¶¶ 45–46.)  Plaintiff states that his third surgery took place on May 10, 2014, but he makes no allegations of deliberate indifference following that date.

In its decision disposing of Grievance 21389, CORC specifically notes that Plaintiff's claims regarding medical care "from 2013 to May 2014" were untimely, and "would not be addressed in the instant complaint."  (Turkle Decl. Ex. 5 at Bates No. COLON 00948.)  Plaintiff's argues that in spite of this plain language, CORC "rendered decisions [on the merits] regarding plaintiff's ongoing serious medical condition," thus exhausting Plaintiff's claims dating back to September of 2013.  (Pl. Mem. Opp. Sidorowicz Mot. 12.)  Given CORC's explicit rejection of the portion of Plaintiff's grievance preceding May 2014, this argument is meritless.  Moreover, while Plaintiff cites to *Johnson v. Killian*, 680 F.3d 234 (2d Cir. 2012), for

the proposition that "a single grievance identifying two years of a 'specific and continuing complaint that ultimately becomes the basis of a lawsuit' meets the requirements of the PLRA," (Pl. Mem. Opp. Sidorowicz Mot. 8 (citing *Johnson*, 680 F.3d at 238–39)), *Johnson*'s holding applied to a complaint that continued *after* Plaintiff had timely filed a grievance. The plaintiff in *Johnson* did not attempt to argue that complaints predating his grievance by several months should be deemed timely because they arose from the same nucleus of facts as those complaints timely asserted in his grievance. Furthermore, the Second Circuit cautioned that it did not hold "that generalized complaints regarding the conditions of an inmate's confinement will suffice to shortcut the administrative remedy process." *Johnson*, 680 F.3d at 239. Plaintiff may not bootstrap untimely complaints regarding his medical treatment following his first and second surgeries to related, but distinct, complaints following his third surgery by declaring that all such complaints comprised one specific and continuing grievance.

Since CORC declined to address the merits of Plaintiff's claims prior to May 10, 2014, and rejected such claims as untimely, Plaintiff failed to properly exhaust his claims arising from complaints he made prior to 2014, to the extent such claims can be deemed to assert that Sullivan medical staff did not appropriately respond to his medical needs. *See Colon v. Annucci*, No. 17-cv-4445, 2018 WL 4757972, at *17 (S.D.N.Y. Sept. 28, 2018) (dismissing claim for failure to exhaust where "Plaintiff attached an exhibit to the Complaint clearly stating that the CORC found that 'his allegations of false misbehavior reports [we]re untimely' and declined to address them") (citing *Woodford*, 548 U.S. at 83–84). In sum, Plaintiff did not exhaust the deliberate indifference claims in this action by filing and fully appealing Grievance 21389.

Grievance 21696, dated April 27, 2015, includes a recitation of Plaintiff's assault and three facial surgeries. (Turkle Decl. Ex. 10 at Bates No. COLON 01046.) The remainder of

Grievance 21696 describes Plaintiff's continued medical complaints following his surgeries and demands that Plaintiff's medical issues be addressed and resolved by a reconstructive surgeon. (*Id.* at Bates No. Colon 01046–47.)  Nothing in Grievance 21696 describes deliberate indifference on the part of Defendant Sidorowicz and Sullivan medical staff.  Moreover, upon Plaintiff's appeal of Grievance 21696, CORC rejected "grievant's 2013 and 2014 allegations of assault and medical negligence [as] untimely."  Thus, Grievance 21696 did not properly exhaust any of the deliberate indifference claims included in the Amended Complaint.

Because Plaintiff did not exhaust his Section 1983 claims against Defendant Sidorowicz, and because administrative remedies were available to Plaintiff, Defendant Sidorowicz's motion for summary judgment dismissing the Amended Complaint as against him is granted in its entirety.

## II. Medical Defendants' Motion for Summary Judgment

In light of the Court's dismissal of Plaintiff's claims against Defendant Sidorowicz, Medical Defendants seek summary judgment dismissing Plaintiff's medical malpractice claims against them.  Since Defendant Sidorowicz's motion has been granted, there are no remaining federal claims in this action and a lack of complete diversity.  (*See* Medical Defendants' Memorandum in Support of Motion for Summary Judgment ("Medical Defs' Mem.") (ECF No. 146) 1–2.)  Accordingly, Medical Defendants argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's medical malpractice claims, which are the only claims remaining in this action.  (*Id.* 2.)

Pursuant to the 9/15/17 Order, the Court possesses supplemental jurisdiction over Plaintiff's medical malpractice claims.  Thus, the relevant inquiry is whether the Court should exercise its discretion to discontinue its jurisdiction.  *See* 28 U.S.C. § 1367(c) (providing that a

district court "may decline to exercise supplemental jurisdiction" if one of four circumstances applies); *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018) (after dismissing federal claims, the "District Court only faced the discretionary inquiry of whether to discontinue that jurisdiction").  Pursuant to 28 U.S.C. § 1367(c)(3), a federal court may properly dismiss a claim for which it originally had supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."  "Under this prong, and in a great many cases, the evaluation will usually result in the dismissal of state-law claims."  *Catzin*, 899 F.3d at 83.  However, the fact that all federal law claims have been eliminated prior to trial does not automatically render dismissal of state law claims appropriate.  *Id.*  Courts should not decline to exercise supplemental jurisdiction based on any of the enumerated factors in 28 U.S.C. § 1367 unless they also determine that exercising supplemental jurisdiction would not promote the values of "economy, convenience, fairness and comity."  *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006).

With these considerations in mind, the Second Circuit has found that where a case has been long-pending and presents no novel issues of state law, and where discovery has been completed, dispositive motions have been submitted, and the case would soon be ready for trial, the exercise of supplemental jurisdiction in the absence of surviving federal law claims is appropriate.  *Catzin*, 899 F.3d at 83; *see Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014) (citing *Raucci v. Town of Rotterdam*, 902 F.2d 1050, 1055 (2d Cir. 1990)) (affirming exercise of supplemental jurisdiction where case had been before the district court for over six years, discovery was completed, dispositive motions had been submitted, and the case was nearly trial-ready); *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305–06 (2d Cir. 2003)

(collecting cases). Conversely, where federal claims are dismissed at a relatively early stage and the remaining claims involve issues of state law that are unsettled, the Second Circuit has concluded that the exercise of supplemental jurisdiction is an abuse of discretion. *Valencia ex rel. Franco*, 316 F.3d at 306 (collecting cases).

Here, although Plaintiff commenced his action on September 18, 2015, over four years ago, his case has progressed slowly. After obtaining counsel, Plaintiff filed the Amended Complaint on August 15, 2016, (ECF No. 41), and Defendants filed motions to dismiss on December 16, 2016, and January 17, 2017, respectively, (ECF Nos. 58, 68.) On September 15, 2017, the Court issued the 9/15/17 Order granting the motions in part and denying them in part. (ECF No. 79.) Defendants filed answers to the Amended Complaint in late October of 2017. (ECF Nos. 81, 83.) By Plaintiff's own account, while the parties have made Rule 16 disclosures, served and answered interrogatories, and exchanged preliminary paper discovery including Plaintiff's medical and prison records, the only deposition that has been conducted thus far was of plaintiff by counsel for State Defendants and was limited to issues related to the PLRA exhaustion requirements. (Plaintiff's Memorandum in Opposition to Medical Defendants' Motion for Summary Judgment ("Pl.'s Mem. Opp. Medical Defs. Mot.") (ECF No. 150) 6.) Accordingly, the parties have yet to complete party depositions, potential non-party depositions, and expert discovery. (Medical Defs.' Mem. 3; Mandell Decl. ¶ 10.) Moreover, discovery has been stayed since October 15, 2018, pending the submission and disposition of the motions presently before the Court. (ECF No. 117.)

Plaintiff complains that having to re-file his claims in state court would constitute a "significant setback," asserting that he is already almost 81-years-old. (Pl.'s Mem. Opp. Medical Defs. Mot. 6.) While the Court is sympathetic to Plaintiff's desire for an expeditious resolution

to his claims given his age, the fact remains that this case is far from trial-ready. Plaintiff does not dispute this. In addition, to the extent that Plaintiff is concerned about the amount of paper discovery that has already been exchanged, there is no reason that such discovery cannot be used in state court, without the necessity of making duplicative disclosures.

In light of the dismissal of all federal claims from this action, the substantial discovery that remains outstanding, and the fact that Plaintiff's "medical malpractice claims against [Medical Defendants] involve quintessential state law issues best resolved in a state forum," *Weathers v. Millbrook Central Sch. Dist.*, 486 F. Supp. 2d 276 (S.D.N.Y. 2007), the Court, in its discretion, declines to exercise supplemental jurisdiction over Plaintiff's medical malpractice claims. Accordingly, those claims are dismissed, without prejudice to Plaintiff bringing the same claims in state court.

### III.   Plaintiff's Motion for Leave to File a Certificate of Merit

Since the Court dismisses the Amended Complaint against Medical Defendants, it need not decide Plaintiff's motion for leave to a file a belated certificate of merit pursuant to N.Y. C.P.L.R. § 3012-a(a). Accordingly, Plaintiff's motion is denied as moot.


### CONCLUSION

For the foregoing reasons, Defendant Sidorowicz and Medical Defendants' respective motions for summary judgment are GRANTED, and the Amended Complaint is dismissed as against them. The Court's dismissal of Plaintiff's claims against Defendant Sidorowicz is with prejudice. The Court's dismissal of Plaintiff's medical malpractice claims is without prejudice to properly refiling those claims in state court. Plaintiff's motion for leave to serve a late certificate of merit is DENIED as moot.

The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 123, 137, and 139 and close the case.

Dated:    October 17, 2019               SO ORDERED:
         White Plains, New York

                                               NELSON S. ROMÁN
                                  United States District Judge